# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1005V
UNPUBLISHED

| | |
|---|---|
| MICHAEL KING,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: January 13, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Christine Mary Becer*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT[1]

On July 15, 2019, Michael King filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on December 6, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's left shoulder.

## I.     Relevant Procedural History

As noted, the matter was initiated in July 2019. On October 8, 2020, Respondent filed a status report stating that he had reviewed the records and determined the vaccine administration record was deficient. Specifically, the record indicated that the vaccine was administered in Petitioner's *right* deltoid, but the claim alleges a *left* shoulder SIRVA. ECF No. 21. Respondent requested a ruling regarding the site of vaccine administration before stating his position in this case.

In reaction, Petitioner filed additional documentary evidence in support of his claim including an addendum from his physician addressing the site of vaccination. ECF No. 23. The issue of the site of Petitioner's December 6, 2017 flu vaccination is now ripe for resolution.

## II.    Issue

At issue is whether Petitioner received the vaccination alleged as causal in the left arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which

are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.    Finding of Fact

The following finding of fact is based on a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

- Ex. 2 at 35, a record from Petitioner's December 18, 2017 evaluation by Dr. Wiggins for left shoulder pain "since getting a flu shot on 12/6." Petitioner was assessed at this time with "a shoulder injury due to injection which may have set up inflammation." *Id.* at 4.

- Ex. 3 at 25, a record from Petitioner's December 21, 2017 evaluation at Palmetto Health USC Orthopedic Center. The record states that Petitioner reported "LEFT shoulder pain that started on 12/6/17 after he received a flu shot."[3]

- Ex. 3 at 13, a record from Petitioner's February 23, 2018 follow-up visit to Palmetto Health USC Orthopedic Center. The record states that "[o]n Dec. 6th he had a flu shot in the LEFT arm. After that he started to have full ache in the LEFT shoulder…."

- Ex. 3 at 9, a July 11, 2018 record from Palmetto Health USC Orthopedic Center for follow-up care relating to Petitioner's left shoulder. The record states that Petitioner's left shoulder pain "originated from a flu vaccine in 12/2017."

- Ex. 4 at 1, a physical therapy initial examination from January 16, 2018. The record states that "Patient reports onset of left lateral brachium pain after a flu shot on 12/6."

- Ex. 7 at ¶ 3, Petitioner's affidavit, stating "I received an influenza vaccination in my left shoulder on December 6, 2017….." Petitioner further explained that he is right-handed, and therefore always received vaccinations in his left arm. *Id.* at ¶ 4.

- Exhibit 8, an email communication from Petitioner to Dr. Birdsong on December 13, 2017 stating that he received a flu shot in his left shoulder and was still experienced pain and weakness.

- Ex. 9 at 4, a VAERS form completed by Petitioner on December 25, 2017, stating that he received a flu vaccine in his left shoulder on December 6, 2017.

---

[3] Petitioner sought treatment from Palmetto Health USC Orthopedic Center for left shoulder pain until at least December 10, 2018.  See Exhibit 3 at 22-24, 18-21, 16-17, 13-15, 10-12, 8-10, and 6-8.  Petitioner's orthopedic records consistently refer to Petitioner's left shoulder pain, and consistently link his pain to a flu vaccine in 2017.  See, e.g., Ex. 3 at 11 (stating "the patient originally had an onset of shoulder pain in the fall of 2017 after a flu vaccine.  He states the area of the injection is still tender….").

- Ex. 10, an addendum to Petitioner's December 6, 2017 record of his visit with Dr. Birdsong. The addendum, completed on October 12, 2020 by Dr. Birdsong, states that petitioner noted his flu injection was given "not in the RIGHT deltoid as noted on consent form, but in the LEFT deltoid…." The addendum "is to verify the injection was given in the LEFT deltoid, not the RIGHT." *Id.* at 3-4.

Based on the above medical entries, the preponderance of the evidence supports a finding that Petitioner's December 6, 2017 flu vaccine was more likely than not administered into his left deltoid. Records from December of 2017 are particularly persuasive, including the email to Dr. Birdsong on December 13 (Ex. 8), the evaluation by Dr. Wiggins on December 18 (Ex. 2 at 35), and the VAERS report completed on December 25 (Ex. 9 at 4). These records are less than three weeks after Petitioner's vaccination and provide specific, contemporaneous evidence that the vaccine was administered in his left shoulder.

I acknowledge that the vaccine administration record *itself* memorializes administration of the flu vaccine in Petitioner's right deltoid. Ex. 1 at 53. However, all other medical records support a finding that the vaccine was actually administered in Petitioner's left arm. And the health care provider has now amended the vaccine administration record to indicate that the vaccine was administered into Petitioner's left deltoid. I find this further supports the additional records indicating that the vaccine was administered into Petitioner's left deltoid.

Accordingly, preponderant evidence establishes that the vaccination alleged as causal in this case was more likely than not administered to Petitioner in the left deltoid on December 6, 2017.

V.    **Scheduling Order**

**Respondent shall file, by no later than Friday, February 05, 2021**, a status report concerning how he intends to proceed, or his unfiled Rule 4(c) report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
